(65 Misc. Rep. 88.)

## FIDELITY & DEPOSIT CO. OF MARYLAND v. COMMONWEALTH TRUST CO.

(Supreme Court, Trial Term, Erie County. November, 1909.)

1. INSURANCE (§ 181*)—INDEMNITY—ACTION FOR PREMIUM.

In an action for premium due on a bond given by defendant to secure deposits of municipal funds, it is no defense that a subsequent agreement was made between the city treasurer and defendant, which may have discharged plaintiff from liability on the bond.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 391; Dec. Dig. § 181.*]

2. DEPOSITARIES (§ 7*)—BONDS TO SECURE DEPOSITS OF MUNICIPAL FUNDS—SUBSTITUTION OF SURETIES.

Buffalo City Charter, § 27, providing that "no liability for the breach of any bond or undertaking required by this act shall be released," relates to past defaults, and does not preclude the substitution of new sureties against future defaults on a bond given to secure deposits of municipal funds.

[Ed. Note.—For other cases, see Depositaries, Dec. Dig. § 7.*]

3. WORDS AND PHRASES—"LIABILITIES."

When we speak of "liabilities," we mean those obligations which are contingent, as well as those which are absolute.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4111–4116.]

Action by the Fidelity & Deposit Company of Maryland against the Commonwealth Trust Company. Trial by court without a jury. Judgment for plaintiff.

Crangle & Burke, for plaintiff.

Moot, Sprague, Brownell & Marcy, for defendant.

POUND, J. Plaintiff is a surety company, authorized to execute bonds of suretyship. Defendant is a trust company, authorized to receive deposits of funds of the city of Buffalo. The city of Buffalo having, pursuant to the provisions of the city charter, required of defendant security for the repayment of $900,000, proceeds of the sale by the city of a so-called Hamburg Canal strip, to be deposited with defendant, defendant applied for and obtained the execution by the plaintiff as its surety of two bonds, one in the sum of $125,000, dated August 7, 1906, and one in the sum of $25,000, dated August 14, 1906, and agreed to pay therefor the sum of $375 per annum in advance. The condition of said bonds was that defendant should at all times safely keep, account for, and pay over, upon demand, after 11 months, to the treasurer of the city of Buffalo, and his successors, said sum of $900,000, so deposited with it.

Plaintiff alleges that said bonds are still in full force and effect, and that defendant is indebted to it for the annual premiums thereon, which became due in August, 1907, and August, 1908, for the amount of which it demands judgment. Defendant alleges that, under the agreement entered into between the defendant and the city treasurer,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the money was received on condition that it should be payable on demand "at any time after 11 months" from July 24, 1906, with privilege of earlier withdrawal on notice, and that, after the bonds were given, this agreement was modified by another agreement, entered into between the city treasurer and the defendant, dated April 12, 1907, without the consent of the plaintiff; that thereby the time of payment of said deposit was extended and the conditions of earlier withdrawal were modified, and so plaintiff was discharged from all liability on said bonds. In brief, the claim is that a new contract was then made between the city and the defendant, and that these bonds do not secure the performance of the new contract, and that plaintiff's period of liability terminated with the original contract.

The money of the city remained at all times on deposit with the defendant, payable on demand, subject to certain conditions. While it may well be that the plaintiff might have interposed a good defense to an action on its bonds, for a possible default occurring after the modified agreement was entered into between the city treasurer and the defendant, it might, on the other hand, be held that the city treasurer had no power to modify the original terms of deposit, and that such modified agreement had no binding force. Village of Ft. Edward v. Fish, 156 N. Y. 363, 371, 50 N. E. 973. The city charter (section 59) directs the city treasurer to deposit all moneys received by him subject to check, and does not seem to contemplate that he shall leave the same on time with the designated city depositaries, nor deprive the city of the right to withdraw its funds at any time. Passing that question, I am of the opinion that it does not lie in the mouth of the principal in this case to set up, as a defense to an action for premiums on the bonds, a defense of the surety to a possible action brought against it by the city on the bonds, which defense might not be interposed, and might not be successful if interposed.

But the defendant also pleads, as a defense to the claim for the premium due in August, 1908, that the city had prior to then—new bonds having been given by defendant, with new sureties—released the plaintiff from all liability on these bonds for defaults thereafter, by unanimous vote of the board of aldermen, approved by unanimous vote of the common council, and by the mayor. Such a resolution had been so passed and approved. Its legal efficacy is questioned by the plaintiff. The city charter (section 27) provides:

"No liability for the breach of any bond or undertaking required by this act shall be released."

And plaintiff contends that the city had no power to discharge it as to future liability on these bonds, except upon actual performance of the conditions thereof by its principal. Doubtless, when we speak of a person's "liabilities," we mean those obligations which are contingent, as well as those which are absolute. Cochran v. U. S., 157 U. S. 286, 296, 15 Sup. Ct. 628, 39 L. Ed. 704. Doubtless these bonds were, up to the time of the attempted release of the plaintiff by the city, a liability of the plaintiff, although its principal, the defendant, had not breached its contract with the city. But the problem before the court is simply this: Can the city permit or require the substitu-

tion of a new bond for the existing bond, and discharge the surety on the old bond from future liability thereon; no release of liability for past breach being claimed?

I see no reason why this may not be done. The words "liability for breach," as used in section 27, supra, mean, I think, a liability coming into existence during the life of the bond, relate to the past, and do not preclude the substitution of new sureties against future defaults, as was done in this case. If, when the resolution of release had been adopted, there had been an actual breach, if the liability of the surety had become absolute, then the charter does but declare the rule of the Constitution of New York, which prohibits a city from giving away its property for private purposes. But neither Constitution nor charter dictates that the contract for suretyship may not be terminated as to future liability by consent of parties, although the formality of actual performance is not gone through with. It follows that liability on these bonds for future defaults terminated before the premium for the year beginning August, 1908, became due.

Judgment for the plaintiff for $375 and interest thereon from the 14th day of August, 1907. Prepare decision accordingly.